UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DR. ANDREW K. FOX | § | No. 1:22-cv-00835-DAE |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| CITY OF AUSTIN and JOEL G. | § | |
| BAKER, in his individual capacity, | § | |
| *Defendants.* | § | |

<u>ORDER ON SUMMARY JUDGMENT</u>

Before the Court are cross motions for summary judgment filed by

Plaintiff Andrew K. Fox ("Plaintiff") on February 2, 2024 (Dkt. # 53) and

Defendants City of Austin and Chief Joel Baker ("Defendants") on February 20,

2024. (Dkt. # 54.)  Both parties filed responses on March 22, 2024.  (Dkts. ## 58,

59.)  Both parties replied on April 5, 2024.  (Dkts. ## 60, 61.)

The Court held a hearing on August 15, 2024.  Upon careful

consideration of the arguments asserted in the filings—as well as the arguments

presented at the hearing—the Court **GRANTS in part and DENIES in part**

Defendants' motion for summary judgment.  The Court **DENIES** Plaintiff's

motion for summary judgment.

1

<u>BACKGROUND</u>

In 2013, Dr. Andrew Fox ("Plaintiff") began volunteering as the Lead Chaplain at the Austin Fire Department ("AFD").  (Dkt. # 53-2 at 510.)  The chaplain program is part of AFD's Wellness Center, which houses numerous support services for firefighters, as well as other programming related to the physical and mental health of first responders.  (Dkt. # 54-1 at 4, Ex. 1.)  Plaintiff spent upwards of ten hours per week—all unpaid—ministering to AFD members and running the chaplaincy program.  (Dkt. # 53-2 at 508.)

 Off AFD premises, Plaintiff maintained a blog where he discussed various aspects of the Christian faith.  (<u>Id.</u> at 511.)

In 2021, Plaintiff began writing blog posts discussing "how God designed each person as male or female, and that sex is immutable."  (<u>Id.</u> at 512.)  Specifically, he stated it is unfair to allow males to compete in women's sports.  (<u>Id.</u> at 482-485.)  According to Defendants, the blog posts were calculated to provoke and "trigger" readers.  (Dkt. # 54-3 at 28, Ex. 3.)

After hearing about the blog and finding it offensive, Lieutenant Xolochitl Chafino, AFD's LGBTQ Liaison, informed Chiefs Baker and Vires.  (Dkt. # 54-1 at 7, Ex. 1.)  At the time, Baker and Vires were unaware of the blog's existence.  (Dkt. # 54-4 at 16, Ex. 4.)  After some AFD members found the blog

2

post upsetting and insulting, Baker and Vires met with Plaintiff to discuss their concerns.  (Dkt. # 54-3 at 32, Ex. 3.)  According to Plaintiff, the meeting went well and included "genuine[ness]" and "respectful dialogue."  (Dkt. # 54-5 at 5, Ex. 5.) However, this meeting did not resolve the conflict.

Thereafter, Chafino printed out copies of the blog to solicit comments from AFD members, civilian employees, and outside individuals.  (Dkt. # 54-4 at 15-22, Ex. 4.)  Chafino also met with Plaintiff on multiple occasions.  At one meeting, Chafino felt that Plaintiff stereotyped LGBTQ people and told Vires that she never wanted to meet with Plaintiff again.  (Id. at 23.)  Moreover, she told Baker that AFD personnel would never seek services from Fox or the chaplain program again.  (Dkt. # 54-1 at 13-15, Ex. 1.)

Baker and Vires directed Plaintiff write an apology for his blog post. (Id. at 20-21, 22-23.)  Baker believed this would restore faith and confidence in the AFD chaplain program.  (Id.)  Baker intended the letter to communicate that AFD personnel should feel welcome using the chaplain program, regardless of their identity or beliefs.  (Dkt. # 54-2 at 4-7, Ex. 2.)  However, Baker and Vires were not satisfied with the letter.  Rather, Baker found it defensive and accusatory.  Plaintiff then wrote a second apology.  (Dkt. # 54-11 at 2, Ex. 11.)  Baker found the second letter equally unsatisfactory and Plaintiff was terminated from serving as a volunteer chaplain.  (Dkt. # 53-2 at 95.)

Plaintiff asserts that Defendants violated his rights under the First Amendment Free Speech Clause, Free Exercise Clause, and the Texas Religious Freedom Restoration Act.

## LEGAL STANDARD

To be entitled to summary judgment, the movant must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law will identify which facts are material, and a fact is material only if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). There is no genuine dispute for trial when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Scott v. Harris, 550 U.S. 372, 380, (2007).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "When a party moves for summary judgment on claims on which the opposing parties will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovants' claims." Armas v. St. Augustine Old Roman

4

Catholic Church, No. 3:17- CV-2383-D, 2019 U.S. Dist. LEXIS 112422 (N.D. Tex. July 8, 2019) (citing Celotex Corp., 477 U.S. at 325); see also Austin v. Kroger Texas, L.P., 864 F.3d 326, 335 (5th Cir. 2017) (finding Kroger satisfied its summary judgment burden by asserting Austin had no evidence of causation, which was a specific element of the negligence cause of action).

DISCUSSSION

I.   <u>Free Speech Retaliation</u>

The First Amendment protects a public employee's right to speak as a citizen addressing matters of public concern. Garcetti v. Ceballos, 547 U.S. 410, 413 (2006). Although a citizen "must accept certain limitations on [her] freedom[s] upon entering government service, she does not relinquish the First Amendment rights [she] would otherwise enjoy as [a citizen] to comment on matters of public interest." Bryson v. City of Waycross, 888 F.2d 1562, 1565 (11th Cir. 1989). Therefore, the goal is to "arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the [City], as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968).

The Supreme Court employs a balancing test based on Pickering and its progeny to determine whether a public employee can prove retaliation in

violation of the First Amendment.  To prevail under this analysis, an employee must show that: (1) the speech involved a matter of public concern; (2) the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities; and (3) the speech played a substantial part in the adverse employment action.  Connick v. Myers, 461 U.S. 138, 147-50 (1983); Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)).  If the employee establishes the first three elements, the burden then shifts to the government to prove by a preponderance of the evidence it would have reached the same decision absent the protected speech.  Haverda v. Hays Cnty., 723 F.3d 586, 591-92 (5th Cir. 2013)

    A. Standard of Review

       Plaintiff argues the Court should apply strict scrutiny to free speech retaliation claims based on viewpoint discrimination.  While strict scrutiny may be the appropriate test when claims involve non-government employees, it has rarely been used when the government serves as the employer.  Rather, the Supreme Court has emphasized that the government's ability to regulate speech as an employer is much different from all other situations where it regulates speech. Connick v. Myers, 461 U.S. 138, 140 (1983) (quoting Pickering v. Board of Education, 391 U.S. 563, 568 (1968) ("We also recognized the State's interest as an employer in regulating the speech of its employees 'differs significantly from

those it possesses in connection with regulation of the speech of the citizenry in general.'").

The <u>Pickering</u> balancing approach makes sense because "the [g]overnment, as an employer, must have wide discretion and control over the management of its personnel and internal affairs." <u>Connick</u>, 461 U.S. at 151 (quoting <u>Arnett v. Kennedy</u>, 416 U.S. 134 (1974)).

Plaintiff's authority does not support this Court's application of strict scrutiny. Plaintiff fails to provide a case applying strict scrutiny when the government acts as an employer. In fact, Plaintiff's authority supports the idea that <u>Pickering</u> should apply. <u>See e.g.</u>, <u>Rankin v. McPherson</u>, 483 U.S. 378 (1987) (applying <u>Pickering</u> test to employee speech about the attempted assassination of President Reagan); <u>Amalgamated Transit Union Loc. 85 v. Port Auth. Of Allegheny Cnty.</u>, 39 F.4th 95 (3rd Cir. 2022) (applying <u>Pickering</u> test to employee claims of viewpoint discrimination related to Black Lives Matters slogans on masks); <u>James v. Texas Collin Cnty.</u>, 535 F.3d 365 (5th Cir. 2008) (finding county policies satisfied <u>Pickering</u> balancing test where employee alleged viewpoint discrimination based on election speech).

Plaintiff admits that courts in this context decline to apply strict scrutiny to viewpoint discrimination in government-employment cases. Nevertheless, Plaintiff argues the Fifth Circuit has not spoken on this issue.

7

Plaintiff cites several recent Supreme Court rulings that he believes supports the application of strict scrutiny.  See Kennedy v. Bremerton School District, 597 U.S. 507, 532 (2022); 303 Creative LLC v. Elenis, 600 U.S. 570 at 588 (2023); Janus v. American Federation of State, County, and Municipal Employees, 585 U.S. 878, 906 (2018).

It is not the job of this Court to predict what the Supreme Court might do in the future.  Rather, this Court's obligation is to follow established precedent set by the Supreme Court and the Fifth Circuit.  Recent Supreme Court case law does not mandate the application of strict scrutiny.  In Kennedy v. Bremerton School District, the Supreme Court declined to decide whether strict scrutiny or Pickering applies.  303 Creative is not applicable as the case does not involve a government employer.  600 U.S. 570.  Janus is also not applicable as that case dealt with the constitutionality of agency fees as a form of compelled speech.  585 U.S. 878.  If anything, Janus supports the use of Pickering.  In that case, Justice Alito described the proper use of Pickering, writing the "framework was developed for use in cases involving one employee's speech and its impact on that employee's public responsibilities . . . . Pickering's framework was designed to determine whether a public employee's speech interferes with the effective operation of a government office."  585 U.S. at 880 (quoting United States v. Treasury Employees, 513 U.S. 454, 467).

Because this case implicates religious speech, Plaintiff says Pickering does not apply.  According to Plaintiff, Pickering assumes a secular employee is in a position to disrupt government operations.  However, Pickering makes no such distinction.  Therefore, the Court will apply Pickering to the Free Speech Retaliation Claim.

B. Application of Pickering

Under the Pickering test, an employee bringing a First Amendment retaliation claim must show 1) he suffered an adverse employment action; 2) his speech involved a matter of public concern; 3) his interest in speaking outweighs the employer's interest in promoting efficiency in the workplace; and 4) his speech motivated the employer's adverse employment action.  Gibson v. Kilpatrick, 838 F.3d 476, 481 (5th Cir. 2016).

1. Adverse Employment Action

There is no dispute that Plaintiff was terminated.  Rather, Defendants argue that volunteers are not protected under the First Amendment.  Therefore, as a volunteer chaplain of the AFD, Plaintiff has no protection.

The Court does not find any case law to support Defendants' position. The Supreme Court and the Fifth Circuit have never ruled on this issue.  However, other Circuit courts have concluded that volunteers have rights and are protected by the First Amendment.  See Goldstein v. Chestnut Ridge Volunteer Fire Co., 218

9

F.3d 337, 356 (4th Cir. 2000) ("It also makes no difference that Goldstein was a volunteer fireman; he has been stripped of the powers, rights, and obligations heaped upon members of Chestnut Ridge.")  And "no Fifth Circuit or Supreme Court precedent directly limits 'valuable government benefits' to paid work." Hanson v. Cameron Cnty., No. B-09-202, 2010 WL 148723, at *5 (S.D. Tex. Jan. 14, 2010).  The case cited by Defendants, Barton v. Clancy, did not decide whether terminating a volunteer can violate the First Amendment.  Rather, the court left the question "for another day."  632 F.3d 9, 12 (1st Cir. 2011).  And in another case cited by Defendants, Lynch v. City of Bos., the court "assume[d], without deciding," that terminating a volunteer could violate the First Amendment.  180 F.3d 1, 13 (1st Cir. 1999).  This Court does not find that anything about Plaintiff's status as a volunteer should hinder his protection under the First Amendment. Therefore, the Court finds that Plaintiff satisfies the first prong of Pickering.

2. Matter of Public Concern

To determine whether speech addresses a matter of public concern, courts look to the "content, form, and context of a given statement, as revealed by the whole record."  Connick v. Myers, 461 U.S. 138, 147–48 (1983).  Speech on a matter of public concern relates to "any matter of political, social, or other concern to the community."  Id. at 146.  Even statements with "inappropriate or

controversial character" may be on a matter of public concern.  Rankin v.

McPherson, 483 U.S. 378, 387 (1987).

Overall, the question is whether the speech is about and directed to the

workplace—as contrasted with the broader public square.  If an employee's speech

is about, in, and directed to the workplace, he has no "possibility of a First

Amendment claim."  Garcetti, 547 U.S., at 418.  In Treasury Employees, the Court

held the government's policy prevented employees from speaking as "citizen[s]"

on "matters of public concern" because the speeches and articles "were addressed

to a public audience, were made outside the workplace, and involved content

largely unrelated to their Government employment."  United States v. Treasury

Employees, 513 U.S. 454, 466 (1995).

The Court finds that Plaintiff's blog was speech on a matter of public

concern.  His blog touched on significant political and cultural issues of our day—

human sexuality and males competing in women's sports.  The Supreme Court has

said explicitly that such topics are of public concern in Janus.  585 U.S. at 914

(quoting Snyder v. Phelps, 562 U.S. 443, 453 (2011)) ("[S]exual orientation and

gender identity" is "undoubtedly [a] matter[ ] of profound 'value and concern to

the public.'") (internal quotation omitted).   Moreover, Plaintiff's blog is not about

the AFD.  The blog encompassed Plaintiff's religious opinion on human sexuality,

which does not affect the functioning of the fire department.   Therefore, the Court finds that Plaintiff has satisfied the second prong of <u>Pickering</u>.

### 3. The speech played a substantial part in the adverse employment action

There is also little dispute that the speech played a substantial part in the adverse employment action.  Chief Baker testified that without Plaintiff's blog, he did not think he would have dismissed Plaintiff.  (Dkt. # 53-2 at 95.)

Defendants argue that Plaintiff was not dismissed because of what he said but because he was no longer able to effectively provide counseling to all members of the AFD community.   The Court finds that this argument is better analyzed under the Government's showing that its restriction of speech was to promote efficiency and avoid disruption to AFD's ability to protect and serve the community.  Indeed, even Defendant's own argument admits that its ability to restore faith in the chaplaincy program is directly tied to Plaintiff's speech.

### 4. Government Interest

Having established that Plaintiff was fired for speaking on a matter of public concern, the public employer must demonstrate "an adequate justification for treating the employee differently from any other member of the general public." <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 418 (2006)).  The government, that is, needs to show that legitimate workplace interests lay behind the speech regulation.

When balancing the interests, the Court will focus on "how the speech at issue affects the government's interest in providing services efficiently: it is the speech's detrimental effect on the efficient delivery of public services that gives the government a legitimate interest in suppressing it." Kinney v. Weaver, 367 F.3d 337, 362 (5th Cir. 2004).

The Government argues it had a legitimate interest in terminating Plaintiff. The chaplain's role is to listen and comfort the firefighters, not provoke and divide. Chief Baker was also concerned that some AFD employees would choose to no longer seek help from AFD's mental health services. (Dkt. # 54-1 at 19, Ex. 1.) ("[Mental health is] a serious issue throughout the fire service…so if a member [doesn't] have faith that…they can go to… the chaplain service in a non-biased manner, then that's a problem for me as the fire chief…"), (Id. at 35) ("I wanted to make sure I was not going to have any disruption because when [Lt. Chafino] reported to me that her and others [were] not going to use the chaplain service or Chaplain Fox, that was enough disruption for me to say 'hey I've got to do something immediately.'") Moreover, chaplains were sometimes called to emergency scenes to provide comfort to firefighters and community members. (Dkt. # 54-3 at 5-6, Ex. 3.) Chief Baker feared that these emergency operations could be disrupted if Plaintiff appeared at the scene. (Dkt. # 54-2 at 14, Ex. 2.)

Moreover, Baker feared Plaintiff's speech would create a negative perception that the AFD would not serve all community members equally.

The Court finds that there is a genuine dispute of material fact regarding the impact that the blog had on the AFD.  The parties vehemently disagree over whether those offended by the blog made up a small cohort of employees who never attended the Champlain services or whether the blog had a broader impact.  For instance, Plaintiff argues that for the most part, AFD employees were unaware that Plaintiff even wrote a blog.  (Dkt. # 54-4 at 16, Ex. 4.)  However, at the hearing on August 15, 2024, Defendant described a chain of AFD employees who were aware of the blog and brought it to Chief Baker's attention.  Moreover, Plaintiff argues that there is no evidence that actual usage of the chaplaincy decreased. (Dkt. # 53-2 at 508.)   However, Defendants note that AFD employees stated that they refuse to attend the services because of the blog.  Ultimately, there is a genuine dispute of whether the government's legitimate rationale for termination in the abstract is supported by the facts of this specific case.

This case is unlike Cochran v. City of Atlanta, 289 F. Supp. 3d 1276, 1282 (N.D. Ga. 2017).  In that case, a fire chief was terminated because of his religious speech.  The court found that Plaintiff's status as the Fire Chief—and thus the head of a safety agency—also favored the City.  The court found it was not

unreasonable for the City to fear public erosion of trust in the Fire Department. Indeed, the court noted the expressive activities of a highly placed supervisory employee will be more disruptive to the operation of the workplace than similar activity by a low-level employee with little authority or discretion.  Like in Cochran, in Nixon v. City of Houston, a police officer authored a monthly column in a local magazine.  511 F.3d 494, 495 (5th Cir. 2007).  The officer identified himself as a police officer and wrote offensive and disrespectful comments about certain groups of citizens in the column, including derogatory remarks about minorities, women, and homeless individuals.  Id.  The Court applied Pickering and found that the officer's articles were not protected by the First Amendment. Id. at 499.  The Court found that the articles written by the officer could negatively interfere with the police department's relationship with the community and would thus interfere with the efficient operations of the department.  Id. at 500-01.

However, the facts in Cochran and Nixon do not apply to this case. For one, the present case involves a voluntary chaplain.  In this case, there is a genuine dispute as to whether his position has ever or could impact the fire department's relationship with the community.  There is a dispute over whether the anyone would perceive his online blog to impact the creditability or trust in the fire department.  The parties genuinely disagree as to whether the public tied Plaintiff to the AFD.   Unlike in Nixon, Plaintiff never identified himself as a member of the

AFD when writing the blog.  However, at the hearing on August 15, Defendant said that he was identified as part of the AFD by virtue of a hyperlink to his Facebook page.

The Fifth Circuit has said a government's interest is stronger when a public employee has a policymaking or confidential position. Brady v. Fort Bend Cnty., 145 F.3d 691, 707–08 (5th Cir. 1998); Elrod v. Burns, 427 U.S. 347, 375 (1976) (Stewart, J., concurring) (a government cannot fire "a nonpolicy making, nonconfidential government employee" on the sole ground of his political beliefs.) But given the nature of Plaintiff's position and the fact that he provides emergency services the frontline firefighters, the Court cannot say that this factor is determinative.

"[R]eal, not imagined, disruption is required."  Branton, 272 F.3d at 741.  And "[m]ere allegations of disruption are insufficient." Sexton v. Martin, 210 F.3d 905, 912 (8th Cir. 2000).  In this case, there is a genuine dispute of material fact regarding the extent of the disruption that occurred within AFD.  Therefore, the Court denies the cross motions for summary judgment on the free speech retaliation claim.

II.     Free Exercise Claim

The Free Exercise Clause protects individuals from the government restraining or invading their right to practice their religion.  U.S. Const. Amend. I;

School Dist. of Abington Tp., Pa. v. Schempp, 374 U.S. 203, 222-23 (1963).  To

prevail on a free exercise clause, an individual must show that the government

impermissibly burdened a sincerely held religious belief.  Frazee v. Ill. Dep't of

Employment Sec., 489 U.S. 829, 834 (1989).  To invoke First Amendment

protections, a plaintiff must plead he has a "sincerely held religious belief."  Frazee

v. Illinois Dep't of Employment Sec., 489 U.S. 829, 834 (1989).  "After

demonstrating that he possesses a 'sincerely held religious belief,' a plaintiff must

prove that a government regulation substantially burdens that belief."  A.A. ex rel.

Betenbaugh v. Needville Indep. Sch. Dist., 701 F. Supp. 2d 863, 876 (S.D. Tex.

2009), aff'd, 611 F.3d 248 (5th Cir. 2010).

　　　　In Kennedy v. Bremerton School District, the Supreme Court held that

the school district burdened Kennedy's rights under the Free Exercise Clause by

suspending him for leading a group prayer at midfield following a high school

football game.  597 U.S. 507 (2022).  In Kennedy, the school district asked the

Supreme Court to apply Pickering to the free exercise claim.  The Court did not

decide on the proper standard, holding the question to be irrelevant since the

school district could not sustain its burden under any proposed standard.  Id. at

532.

　　　　In concurrence, Justice Thomas acknowledged the Court did not

decide what burden a government employer must shoulder to justify restricting an

employee's religious expression.  Justice Thomas wrote, "while we have many

public-employee precedents addressing how the interest-balancing test set out in

Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty., 391 U.S.

563 (1968), applies under the Free Speech Clause, the Court has never before

applied Pickering balancing to a claim brought under the Free Exercise Clause."

Kennedy, 597 U.S. at 545 (Thomas, J., concurring).  A government employer's

burden therefore might differ depending on which First Amendment guarantee a

public employee invokes.  Id.

    While the Supreme Court has yet to articulate the proper standard

when free speech of a government employee interacts with the free exercise clause,

this Court finds authority from sister circuits to employ Pickering.  Plaintiff cites

no case applying strict scrutiny in this context.  Plaintiff merely cites a concurrence

in Kennedy that did not decide the issue but rather hints that the Supreme Court

should take up the issue at a later date.  Kennedy, 597 U.S. at 545 (Thomas, J.,

concurring).  Plaintiff also suggests that "history and tradition" mandates strict

scrutiny.  However, Plaintiff offers no historical evidence or tradition to make such

a determination.

    Several circuit courts have applied Pickering to public employee

claims involving religious speech or the free exercise of religion.  See, e.g.,

Lumpkin v. Brown, 109 F.3d 1498, 1500–01 (9th Cir. 1997); Brown v. Polk

County, Iowa, 61 F.3d 650, 658 (8th Cir. 1995) (en banc), cert. denied, 516 U.S.

1158 (1996) ( "[Pickering ] dealt with free speech rather than the free exercise of

religion, but because the analogy is such a close one, and because we see no

essential relevant differences between those rights, we shall endeavor to apply the

principles of Pickering to the case at hand."); Baz v. Walters, 782 F.2d 701, 708

(7th Cir. 1986); see also Altman v. Minn. Dep't. of Corr., 251 F.3d 1199, 1204 (8th

Cir. 2001); Knight v. Conn. Dept. of Public Health, 275 F.3d 156, 166-67 (2nd Cir.

2001) (rejecting application of strict scrutiny to a plaintiff's hybrid free speech free

exercise claim).  The Fifth Circuit has also applied Pickering in a challenge to a no-

pins policy related to police uniforms.  Daniels v. City of Arlington, Tex., 246 F.3d

500, 502-04 (5th Cir. 2001).  In Daniels, wearing a cross on his uniform was part

of a police officer's religious expression and speech.  Id. at 504.  Although the

speech was religious in nature, the case was analyzed under Pickering.  Id. at 502-

04.

   Based on Daniels and persuasive nonbinding out of circuit precedent,

the Court will apply Pickering.  While Pickering is a more lenient standard for the

government to meet, it does not automatically entitle them to restrict the speech of

its employees.  The balancing test merely recognizes that the government may

have legitimate reasons in certain circumstances to restrict speech.

The Court finds that Plaintiff has demonstrated a sincerely held belief. Plaintiff wrote his blog about women's sports and human sexuality because of his belief that God created each individual as male or female and that sex is immutable.  (Dkt. # 53-2 at 513.)  Plaintiff sincerely believes that his blog is part of his "spiritual calling."  Moreover, Plaintiff has shown that Defendant substantially burdened that belief by virtue of his termination.  However, there is a genuine dispute of fact regarding whether the termination violated the First Amendment under Pickering.

Defendant again argues that Plaintiff's status as a volunteer does not entitle him to protections under the Free Exercise Clause.  Once more, this Court finds that nothing in the constitution or precedent withholding rights under the Free Exercise Clause because of one's status as a volunteer.  This is particularly so in circumstances such as here where Plaintiff began volunteering in 2013 and may be outfitted in his AFD uniform, appearing to be seen as part of the Department.

Lastly, under Pickering, Defendants argue that the fire department has a legitimate interest in preventing disruption at AFD and ensuring the chaplain program is accessible to all personnel.  Moreover, Fifth Circuit precedent has found a special interest in ensuring that police demonstrate impartiality.  Daniels, 246 F.3d at 504 (City's interest in promoting a police force that was impartial

outweighed the plaintiff police officer's interest in practicing his religion by wearing a cross pin with his police uniform.)

The Court recognizes these important interests and holds that there is a genuine dispute of material fact regarding disruption that occurred at AFD. As stated above, the parties genuinely disagree and have both presented evidence regarding disruption at AFD. Therefore, the Court denies the cross motions for summary judgment on the free exercise claim.

III.   Texas Religious Freedom and Restoration Act

The Texas Religious Freedom Restoration Act ("TRFRA") provides that "a government agency may not substantially burden a person's free exercise of religion [unless it] demonstrates that the application of the burden to the person . . . is in furtherance of a compelling government interest [and] is the least restrictive means of furthering that interest." Barr v. Sinclair, 295 S.W.3d 287, 289 (Tex. 2009) (quoting Tex. Civ. Prac. & Rem. Code §110.003(a)-(b)). In determining whether there was a violation of TRFRA, the court evaluates: 1) did the government action burden religion, 2) was the burden substantial, 3) does the government action further a compelling government interest, and 4) is the government action the least restrictive means of furthering that interest? Id. at 299.

To determine if the government action substantially burdens religious exercise, courts look to whether the government action "truly pressures the

adherent to significantly modify his religious behavior and significantly violate his religious beliefs."  Id. at 301 (citing Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir. 2004)).

Defendants argue they have a compelling interest in ensuring that firefighters feel comfortable accessing mental health services due to the stressful nature of their jobs.  Defendants also believe there is a compelling interest in preventing conflict and division among AFD personnel.  As stated earlier, the Court agrees that these interests may be compelling in the abstract.  However, there is a genuine dispute as to whether these interests apply in practice to the present case.

There is a genuine dispute of material fact regarding if or how Plaintiff's blogs impacted mental health services he provides to both AFD and the community at large.  There is a genuine dispute of fact regarding whether the blog impacted the number of people who would feel comfortable attending chaplain services prospectively.  Beyond the few initial employees who discovered the blog, AFD employees were unaware Plaintiff wrote a blog.  (Dkt. # 54-4 at 16, Ex. 4.)  However, there is evidence to suggest that more people became aware of the blog. The parties also present contested evidence regarding whether Plaintiff could be identified as an AFD volunteer chaplain through his blog.  (Dkt. # 53-2 at 482-487.)  Therefore, there is a genuine dispute of fact regarding whether his blog

22

discussing his religious beliefs could negatively impact the relationship between AFD and the Austin community.  Moreover, there are questions of fact underlying whether Defendants' request for an apology was the least restrictive means in burdening Plaintiff's religious speech. Therefore, the Court denies the cross motions for summary judgment under the TRFRA because there is a genuine dispute as to whether the compelling interest provided by the government applies to this case.

IV.   Compelled Speech

"Generally, the government may not compel a person to speak its own preferred messages."  303 Creative LLC v. Elenis, 600 U.S. 570, 586 (2023).  The First Amendment protection against compelled speech stems from the principle that individuals should decide for themselves which ideas they wish to express. Agency for Int'l. Dev. v. All. For Open Soc'y Int'l, Inc., 570 U.S. 205, 213 (2013). With compelled speech, individuals are coerced into betraying their convictions. Forcing free and independent individuals to endorse ideas they find objectionable is always demeaning.  For that reason, courts usually do not apply a deferential test for compelled speech claims.  Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc., 487 U.S. 781, 782 (1988).  However, when citizens enter government service, they must accept limitations on their freedom linked to the unique nature of the government's interest in managing its administrative affairs, operations, and

workforce to ensure the satisfactory provision of public services.  Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)).

The Fifth Circuit and the Supreme Court have not yet ruled on the standard of review that applies to compelled speech of a government employee. However, many courts apply Pickering to compelled speech claims brought by public employees.  Hiers v. Bd. of Regents of the Univ. of N. Tex. Sys., No. 4:20-CV-321-SDJ, 2022 WL 748502, at *12 (E.D. Tex. Mar. 11, 2022) (citing Berry v. Dep't of Soc. Servs., 447 F.3d 642 (9th Cir. 2006); Knight v. Conn. Dep't of Pub. Health, 275 F.3d 156 (2d Cir. 2001).

When an individual speaks in official communications as part of their job duties, their speech is not protected by the First Amendment.  Garcetti, 547 U.S. at 423-24.  "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen."  Id. at 421-22.  This is because employers have an interest in controlling official communications and ensuring their accuracy, promoting the government's mission, and demonstrating consistency and clarity. Id. 422-23.

In determining whether a public employee's speech was within the scope of his official duties, courts consider whether a certain task is listed in a formal job description, whether the speech concerns the subject matter of

employment, and whether the speech occurs inside the office.  <u>Garcetti</u>, 547 U.S. at

420-21.  The Fifth Circuit has found speech to be unprotected in this manner, even

when the speech was not explicitly required under the individual's job duties but

was related to the job duties or uses special knowledge learned from their position.

<u>Harrison v. Lilly</u>, 854 F.App'x 554, 557 (5th Cir. 2021).

  Plaintiff complains that his speech was compelled when Chief Baker

requested that Fox write an "apology letter."  Plaintiff was asked to write the letters

pursuant to his official duties as a volunteer chaplain.  The purpose of the letter

was to restore faith and confidence in AFD's official chaplain program.  Chief

Baker planned to send the letter out to the AFD community through official

channels with the hope that all would feel welcome to continue to use the

chaplaincy program.  (Dkt. # 54-1 at 24, Ex. 1.); (Dkt. # 54-2 at 3, Ex. 2.)

  The Court finds that it was permissible for the fire department to

request an apology note.  It does not violate the First Amendment to ask an

employee or volunteer to make an official statement to maintain a harmonious and

orderly workplace.  While there is not much precedent on this issue, other courts

have signaled that compelled apologies in similar contexts do not violate the First

Amendment.  <u>Corder v. Lewis Palmer Sch. Dist. No. 38,</u> 566 F.3d 1219, 1231-32

(10th Cir. 2009) (requiring a student apologize about past speech was a reasonable

disciplinary action and an appropriate way to ensure the views of the individual

speaker were not erroneously attributed to the school); <u>Hiers</u>, 2022 WL 748502, at

*15 (implying in dicta that requiring an employee to apologize for the way he

delivered a message would not violate the First Amendment).

   Requesting this letter does not violate the First Amendment's

prohibition on compelled speech because this letter was going to be used as an

official AFD communication and Fox was directed to write it as part of his duties

as volunteer lead chaplain.  When public employees speak pursuant to their official

duties, employees are not speaking as citizens for First Amendment purposes.

<u>Gibson v. Kilpatrick</u>, 773 F.3d 661, 667 (5th Cir. 2014) (citing <u>Garcetti</u>, 547 U.S. at

421).

   Because Plaintiff was tasked with writing the letter as an official duty,

his speech is unprotected and the compelled letter did not violate the First

Amendment.  Therefore, the Court grants Defendant's motion for summary

judgment on this claim.

V.   <u>Texas Constitutional Claim</u>

   The Texas Supreme Court has repeatedly rejected invitations to

interpret the provisions of the Texas Bill of Rights more broadly than the First

Amendment and has cautioned against it." <u>HEB Ministries, Inc., v. Tex. Higher</u>

<u>Educ. Coordinating Bd.</u>, 114 S.W.3d 617, 636 (Tex. App.—Austin 2003), rev'd on

other grounds, 235 S.W.3d 627 (Tex. 2007) (citing cases).  Texas courts treat

Section 6 of the Texas Constitution as coextensive with the First Amendment,

unless the plaintiff argues specifically that the application of each is different.

Tilton v. Marshall, 925 S.W.2d 672, 677 n.6 (Tex. 1996).  The Texas Supreme

Court has also declined to hold that the Texas Constitution's protection of

noncommercial speech is broader than the First Amendment.  Tex. Dep't. of

Transp. v. Barber, 111 S.W.3d 86, 106 (Tex. 2003).

Therefore, the Court denies the cross motions for summary judgment

on Plaintiff's claims under the Texas Constitution for those reasons it denied their

claims under the Federal Constitution.

VI.    Qualified Immunity

Qualified immunity protects government officials from liability where

their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known.  Carroll v. Ellington, 800 F.3d

154, 169 (5th Cir. 2015).  Whether an individual is entitled to qualified immunity

at the summary judgment stage is determined by following a two- part analysis: (1)

whether the undisputed facts, and the disputed facts viewed in the light most

favorable to the plaintiff, establish a violation of a constitutional right, and (2)

whether the defendant's conduct was "objectively reasonable in light of clearly

established law."  Id. at 154.  When a defendant asserts qualified immunity, the

burden is on the plaintiff to produce evidence to pierce that immunity.  Atteberry v. Nocona General Hospital, 430 F.3d 245, 253 (5th Cir. 2005).

Defendants argue that Chief Baker is entitled to qualified immunity because the law is not clearly established that removal of a volunteer by a public employer based on speech is protected under the First Amendment.  In Barton v. Clancy, the First Circuit declined to decide if removal of a volunteer was a constitutional violation and held the law was not clearly established.  632 F.3d 9, 27 (1st Cir. 2009).  Therefore, the relevant government official had qualified immunity.  Id.  The Fifth Circuit and the Supreme Court are still silent on this question.  The First Circuit, Second Circuit, Seventh Circuit, and Ninth Circuit have found that volunteers are entitled to constitutional protections, but these decisions were in reliance on state statutes which mandated volunteers be treated as employees.  Id. at 24-25.  Only the Tenth Circuit has found independent First Amendment protection for volunteers.  Id. at 25.

Without clearly established law governing the dismissal of a volunteer in the First Amendment context, the Court finds claims against Baker must be dismissed under qualified immunity.  As Defendants note, the application of qualified immunity in this case does not destroy liability against the City.  Defendants admitted that Chief Baker was the final decisionmaker.  Therefore, Monell liability for the City can be established.  (Dkt. # 53-2 at 53); Pembaur v.

<u>City of Cincinnati</u>, 475 U.S. 469, 481 (1986) (Municipal liability attaches where the "decisionmaker possesses final authority").

VII.   <u>Relief</u>

Plaintiff asks this Court to award nominal damages and any additional remedies to be awarded as seen fit.  Because Plaintiff only seeks nominal damages, Defendants ask that the state law claims be dismissed for lack of subject matter jurisdiction for lack of standing.  Recently, the United States Supreme Court held that nominal damages satisfy the redressability prong of standing based on facts similar to the case at hand.  <u>See</u> <u>Uzuegbunam v. Preczewski</u> 592 U.S. 279 (2021) (holding that standing exists based on nominal damages where two students sued college officials who were enforcing a campus policy that infringed on the students' ability to distribute religious literature).  Texas courts have not definitively answered the question of whether nominal damages support standing of state claims.  That being said, since <u>Uzuegbunam</u>, a number of lower courts in Texas have followed the federal rule and upheld standing.  <u>See e.g.</u>, <u>Gonzalez v. Graham</u>, No. 13-23-00091-CV, 2024 WL 194213, at *6 (Tex. App. Jan. 18, 2024).  Given that the First Amendment claims under the Texas State Constitution are co-extensive with the United States Constitution, the Court finds that there is standing for the state law claims.

<u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS IN PART** and

**DENIES IN PART** Defendants' motion for summary judgment. The Court

**DENIES** Plaintiff's motion for summary judgment. The claims against Baker are

**DISMISSED** based on qualified immunity.   The Compelled Speech claims are

also dismissed.  The remaining claims will proceed to trial.

**IT IS SO ORDERED.**

**DATED:** Austin, Texas, September 4, 2024.

_____

David Alan Ezra
Senior United States District Judge